Good morning, your honors, and may it please the court. My name is Michael Fincher on behalf of John Thurston, Arkansas Secretary of State, in his official capacity. This case is about a prospective independent candidate's failed attempt to access the ballot numerous times. At issue here is the fact that Mark Moore lacked standing and has lacked standing throughout this case. Counsel, I want to, before you get to standing, and the parties didn't do a great job briefing this, but Arkansas has now passed a law that changes the date to May 1st. And I'm gonna ask opposing counsel, why isn't this case moot? I mean, I don't get it. Your honor, one of our arguments is that this case is moot, but that our mootness ground is the fact that Mark Moore failed to become a candidate in 2014. For that, the 28-J response letters, our argument is, one, that one of the acts in question wouldn't even apply to Mark Moore because it only applies in presidential election years. Statewide candidate elections do not take place in presidential election years. Two, those laws are not into effect yet. In Arkansas, laws go into effect 91 days after the adjournment. But here's the problem I'm having. I'll just be, so the plaintiffs sought standing on substantial likelihood. There's a substantial likelihood that this is going to apply to me. I think that substantial likelihood is gone, even without the law going into effect, because there's no evidence there's going to be a petition or anything like that. And as you say, it's done in presidential election years. So there's somewhere between a zero and a 1% chance, most likely, that this would ever be applied to him. And so why doesn't that substantial likelihood just fall away in the case's moot? It's kind of an already versus Nike type of situation. And we're getting into the territory of whether or not this issue is capable of repetition, yet evading review. The facts of this matter are that plaintiff has never pled or testified that he would be a candidate beyond 2018, second of all. Well, and the capable repetition, yet evading review would fall right away because the fact of the matter is, is it's likely to become law in August, whatever it is. And I'd also go back to an affidavit made by Apley Moore post-trial, post May 1 of 2018, in the supplemental addendum, page 52. And that raises a lot of questions about his credibility as anything but a frivolous candidate. And that also ties into standing. The problem I have with the standing, I'll just be honest, and why I think this mootness ground may be better, is the standing, there was standing at the outset, either as a voter or as a plausible candidate. He only really lost standing when he was granted relief, and then he failed to file in 2018. And so that's kind of the problem I'm having with the standing argument. I'm trying to direct you a little bit towards the mootness, because that might be a more fruitful argument for you. And of course, I do have some minor objections. I'll get to those later though. Per mootness, so we would argue that this case was moot in 2014 because there were two independent bases to reject Mark Moore's access to the ballot. He had never signed his notice of candidacy. That was always law that notice of candidacies had to be filed by the end of the party filing period. That's not complained about in his complaint. His complaint is the fact that the petition signature deadline was moved to the party filing period. That's a whole other story. There's a secondary or a primary reason that we ever submitted petitions. But didn't he have standing as a voter, at least at that point, to say, I want to have all these independent candidates I want. Either we've recognized it or other courts have recognized it. Other courts have, but when voter standing is implicated, there's pleadings to that effect. There's testimony to that effect, and there's evidence to that effect. McLean versus Meyer is an excellent case that distinguishes that fact, where a lot of the voter standing had to deal with the fact that the secretary of state wasn't providing writing implements for writing candidates. They weren't counting ballots. There were a lot of issues in McLean-Meyer. That was a complex case. That's distinguishable on the facts. In this instance, preponderance of the evidence, there's no evidence that Mark Moore had standing. Well, and the state wants us to go down the standing route because then we're going to have to vacate the district court's opinion. If we find there was no standing at the outset, the remedy is the district court's opinion goes away. Is that the reason why you're arguing that? Correct. Even absent that, still post-trial, we have the fact that Mark Moore was granted relief to file his petition signatures by May 1. He failed to file his notice of candidacy, his political practices pledge, affidavit of eligibility by the end of the party filing period deadline. That's relief that he specifically requested in cross-examination testimony where he specifically stated, I want to get on the ballot on equal terms with Republicans and Democrats who can wait until the last day of the filing period to decide if they want to run or not. Joint appendix, page 688. That's one of our key interests there. Another issue is the fact that there was a necessary party in this case that was never brought in. That's the county clerks. They were a necessary party per 12B7 rule 19. When this suit was originally brought, there were three plaintiffs, a county candidate, a statewide candidate, which was Mark Moore, and a state district candidate. They never attached the county clerks despite the fact that they claimed a statute. Well, the statute that they complained about, the statutory scheme, would apply more so to the county clerks than the secretary itself. The problem is- Judge Lowman would know better than I, but it strikes me you're trying to re-argue, re-fight the old war. That's not necessarily an old war, Judge Loken, because the fact that the district- Well, I know, but we remanded, as I read the first opinion, with very specific instructions, directions, indications of what needed to be litigated, and you haven't come near any of those issues. You don't want to, frankly, is what I'm hearing. Well, I'd like to- You briefed them, so maybe you don't have to talk about them this morning, but that's what I was here to- The reason, Judge Loken, the reason I brought the necessary parties back up is because the weren't made party. That might not be as important as some of the other arguments that we have. They're majoring in the minors, as far as I'm concerned. Yep. So I'd like to get into some of the majors, then, Your Honor, in the district court error in failing to apply what's known as the Anderson-Celebrizzi three-pronged test. That's the test that's referenced in McLean-Meyer. That's the test referenced in Green Party of Arkansas versus Martin. In that three-pronged test, the court must first assess the character and magnitude of a plaintiff's injury, which is partially why standing keeps on coming up. Second, the district court must identify and evaluate the precise interest put forward by the state. Lastly, only after that, they must weigh each factor and the legitimacy of each court's write-out, their step-by-step analysis. That's not what took place in this instance with the court's opinion. There was little interaction. We don't care about perfect opinions. We care about correct results. That turns on the record. Our concern is that the district court completely failed to take into account the state's interest, specifically with the May 1 deadline relief. We put forth extensive evidence stating that May 1 deadline is not good for the state. It's nearly impossible for this reason. Well, good for the state isn't good enough for me or the Supreme Court. Well, the evidence, Your Honor— Your convenience is not—doesn't pass the Anderson test. Your Honor, the state's interest— The impracticality of the May 1, if proven, would pass the Anderson test, regardless of our subsequent misstatement of the First Amendment standard. We have proven that, Your Honor. May 1 is impractical— You haven't convinced me. If there really are only two of these candidates a year, there hasn't been one that's been interfered with under the May 1 law. There was a successful independent candidate in 2016, Your Honor. The reason why one of the co-plaintiffs dropped out of the case was because there was a successful candidate at the county level, in fact, numerous. The other reason is that there's only been one election cycle for the 2014 election. The evidence put forth is that litigating petition signatures for independent candidates takes a long time. When we had the May 1 deadline, we weren't getting court orders in until late August. Because of federal law changes in 2009, the deadline to send out ballots and certify ballots was mid-August. That means that we would have been going without court orders after the ballot certification deadline. That's a very critical interest, not only to the state— Where do I go in the record to find out how many candidates or issues wound up on the ballot that then had to be taken off because of the timing problems? Your Honor, we don't have instances where candidates had to be taken off the ballot. That's a compelling interest that we're allowed to assert. If we get to that point, it's a disaster because there's no remedy. You would have to have a ranked choice voting system in place to take an independent candidate off the ballot after they've been certified. The interest there is preventing a scenario where votes are cast. Where's the evidence that all this happened or almost happened when May 1 was the deadline? The state's testimony is in the Joint Appendix on the implications of federal law, pages 625, 682, 787. Is this specific facts of things that happened? Yes. As part of the record, it included a lot of litigation that happened in previous election cycles. That was the justification for moving the party filing period back in 2013. But when you move all independent candidacies to the party candidacies, you frustrate what's been perceived by the Supreme Court and this court as a fundamental political First Amendment reality of independent candidacies. You got to have a darn good reason and you got to show that we were on the brink of disaster under the old law. Regardless of that, the party filing period for independent candidates has always been tied in with the parties. How many federal court decisions have there been criticizing that? Lindo 1, 2, 3, and 4 or whatever they are? So traditionally, it would be that the independent candidates file at the same time as the party candidates. Traditionally, you mean because they had to? Yes. That's also relief requested by the Supreme Court in Anderson over, I thought, quite thoughtful dissents say that's too interfering with the positive aspects of independent candidacy in a two-party system. You got to not do that unless you can prove it's really ruining the world, so to speak. That's why I want to know where your evidence is that this was ruining our world as opposed to we didn't like it and it was friendlier for our clerks to keep it the bad old way that the federal courts don't like. As stated earlier, the evidence is preventing the scenario where we certify an independent candidate to the ballot. If a candidate is certified to the ballot and then a court order occurs contesting their petitions later saying that they're not certified for the ballot, that creates a scenario where it now affects that political race in general because people will be Is there a time limit on challenges? I would argue... Does the state law put a time limit on people going to court saying that guy's petitions are phony? No. Not to my knowledge. Whether it's March 1 or May 1, you can have a court order on October 15 saying challenger X has proven that independent candidate Y's petition signatures were phony. The state's interest is in preventing a scenario where an independent candidate is first certified to the ballot and then the court order says we can't count votes cast for that candidate because we can't take it off. That still exists no matter what the dates are if there's no time limit for challenges. Now if you've got a May 1 candidacy and the law says if you want to challenge the petitions, you got to do it within 15 days after they're filed or the court has no jurisdiction to challenge the certification. Doesn't that solve the problem that you're talking about? That would be... So isn't that a less restrictive way to avoid what you're saying the state's interest has to avoid? Perhaps, Your Honor, but that's not the scenario that we're dealt with with the facts of this record and I see that I'm out of time. But least restrictive or no more restrictive than necessary is the governing standard, isn't it, under Anderson? Correct, correct. I'd like to have some time on a rebuttal, Your Honor. We'll see. Mr. Linger? May it please the court, my name is James Linger. I'm counsel for the apply Mark Moore. I'd like to say at the very beginning here that we've always contended that actually any deadline for independent petitions before the preferential primary election is unconstitutional. However, there was a decision, a majority decision written by Judge Woolman about two years ago, which binds us under the law of the case doctrine. It binds both sides on this and therefore we followed when this case was remanded down to the district court what I have put forth as six questions... It's the law of this case, right? Yeah, the law of this case. You don't have to tell us that we don't love the law of the case. Let's just move on. Both of you want to refight the last war. I think we're bound. I want to end the last war and happily I'm free of it. I don't have to refight it. I'll interrupt by saying what relief do you seek from this court that you didn't get from our first opinion? Well, with the district court... What did your client do after you got our opinion? Well, after we got the opinion, they filed a motion to stay the mandate. No, I'm not interested in that. Did you file? Did your candidate go through and say that what he... Did he do what he said he wanted to do? Did he get it filed? He prepared... Actually, he did... I don't care what he prepared. What did he... Did he qualify for this independent candidacy that he was so enthralled by? He attempted to and he filed petitions and that's explained in his affidavit that was... And the district court then amended the order to let him comply with the statement of candidacy or something else? Well, the law that was challenged allowed the affidavit... I'm not interested in that. Did he get the relief that you ultimately wanted from the district court? Yes, he did. He was allowed to file. How did his campaign go? Well, his campaign was that he filed petitions... No, no, no. Was he successful? He wasn't successful in the petitions because they invalidated enough signatures that he did not have sufficient signatures. Okay, so he got relief but he failed to qualify. So why are we here today? Well, because the law was declared unconstitutional on the declaratory relief and that is something that will have an impact in the future. You're talking about the now. Yeah, the now. What relief do you... You got more relief than you needed, is what Judge Wolman's question suggests. I would respectfully disagree with that. I mean, he got the relief he requested. He got, under the law that was, that all these additional decorations, everything could be filed at the same time. He got what I would call facial relief. Having gotten on his as-applied claim all the relief to which he was entitled at the time, at least. He got that relief, yes. Yeah, that's the facial attack. Why is this injunction... Why does it have any meaning when the new law is going to... When there's a new world? Well, two points on that. First off, under the Eighth Circuit decision in McBride v. Exxon, once the injunctive relief loses its coercive effect, that's over. But you still have the declaratory relief, called in the law unconstitutional, that will have an effect. Declaratory relief on a law that's been replaced, supplanted. And it has. And that's where, and of course, I let the court know, I think that's counsel's duty, that they had amended the law. And that will be in effect in the next election cycle. Well, sooner than that, it'll be in effect in August. And the next election where you're claiming to possibly be affected is basically next year. That is correct. And so there's really no controversy left. Well, here's where... There's no... Let me rephrase that. Okay. There's almost no chance on earth that your client will possibly be affected by the deadline to which he objected, March 1st. As to the March 1st, he will not be affected by that. There still remains the question about whether that... You should still have the earlier deadline for the notice of candidacy, the political practice threats, and the affidavit, which under the law that was held unconstitutional were all due at the same time. But you could bring a lawsuit to challenge that. I mean, my understanding is, is this was all about the petitions or at least 99% about the petitions. And so you could challenge that in a new lawsuit. But at the time, they were all due at the same time. The state didn't have any compelling reason to make it otherwise. I can't think of any. And also, this case is sort of unique in that after the decision, there were three separate motions filed in the district court. And while there was one filed here in the Eighth Circuit, they lost on all of those. And I'm saying, I think the McBride v. Exxon case is very important. They don't really talk about that. But that was where they held the law unconstitutional in Nebraska. And I believe, yes, Nebraska. And then they said after the injunctive relief, they've had the injunctive relief there, they lost the election and everything, but we still had the declaratory relief. Then, of course, they changed the law. And this gets back to another decision that Judge Wolman wrote, which was the Libertarian Party case about 18 months ago, where once again, the law was declared unconstitutional. And then after the briefing, the Arkansas legislature changed the law. And that did moot the case. So that's the question. Although I said the case here, the judge allowed him till May 1st to file the petitions. They had put a deadline of noon. Which is not completely... Now, that's a small part. But I think if they had made the deadline on May 2nd, there'd be no question it mooted it. If they'd made it on April 15th, it wouldn't have mooted it. So I'm saying that is a small part. We mentioned that. 12 hours or whatever difference is... But that could be critical. In his case, where he missed by just... He had enough signatures to get on the ballot for state senate, but he had a couple of invalidated, maybe an extra 12 hours might have paid off or something like that. He does have that affidavit, which is in the joint supplement, which is response to one of these motions they filed. So I'm saying we had to deal with all of these motions. And Mr. Moore explained what had happened from the time of the trial on December 12th until when the decision in late January. And then the appeals, the uncertainty that created trying to raise money. Independents are not like major party candidates of the state. They don't have unlimited resources. And the uncertainty was created. He found out a good friend of his was going to be a minor party candidate for lieutenant governor. And he also had some projects out of state. And that changed the circumstances that were applied. Would you agree, though, that... The Supreme Court, I think, has some cases talking about whether the legal landscape has changed with regard to applying mootness. I mean, that's pretty loosey-goosey language, but that's essentially the gist of what they say. Would you at least admit the legal landscape has materially changed? You now have a law that gives most of the relief, if not all of the relief you want. You have the fact that he didn't have the... He didn't successfully become a candidate when he got almost the relief he wanted. And we can quibble about the 12 hours. I mean, doesn't that sort of say... And there's no election till 2020. I think, as I noted in the brief, he did get the relief he requested, which was the opportunity to successful petition, not the guarantee of success. Just like when you're in a primary for the major parties. You don't guarantee you're going to win the primary. So he won. He won. Yeah, he got the relief he wanted, yes. What do you want from this court today? I would like either a reaffirmation, an affirmation affirming of the saying that the May 1, March 1 deadline is unconstitutional. And the reason is, as you know, and this was talked about in the previous decision, Arkansas has a continual pattern. They have the laws declared unconstitutional. Then they wait a couple of years. Then they reinstitute it. Then they have it declared unconstitutional again. And they have done this on a number of occasions. So you want us to issue an anticipatory declaratory judgment saying, State of Arkansas, we are tired of dealing with you. Treat these candidates fair. No, what I would say is simply that the decision of the district court on the evidence, which I think was overwhelmingly against the Secretary of State, was correct. However, by passing that law, if you think that a law that makes it noon on May 1 ends that, and the fact that it does not allow what the district court allowed, which was all the notice of candidacy, the affidavit, and the political practice pledge to be filed at the same time as it was allowed under the law that was challenged in this case. I'll come back to my question. We rule in your favor. What will the synopsis say? Held my candidate wins? No, a little bit more than that. What I would say is that I would, as was done in the previous decision where we go through the history of what happened here. We have to do that. I mean, why should we do it?  Well, what I'm just saying, as you wrote, Your Honor, in the Libertarian case about 18 months ago, that that new law may have mooted the case at this point. But he did get the effective relief that he requested down there. Well, let's suppose you're right, though, about this 12-hour thing in the new law is really a problem. Couldn't you just, now that the case has changed, couldn't you sue again and say, look, it's a real burden on my client's rights. You know, I want to have it till midnight, and it only gets me till 12 noon, and you could sue and make that a new case rather than trying to make it part of this case? That is a large burden on an individual who has fought this through a long time. And it's also these factors. The courts have noted, you know, in Storer and Anderson, a lot of cases have noticed that they allow people who haven't even tried to petition or something that they have standing. And they recognize this is an exception because of the continuing threat that it can evade review. And the continuing threat to your client is what? Well, the continuing threat is not just the possibility because of past history that the law could come back, but to basically stand as a statement of that there was a correct decision below on this. And if the court thinks, though, that giving them until December, excuse me, of May 1 at noon is enough to moot it, then the case is moot at that point. And we go on from there like we did when you wrote the Libertarian decision. I do want to cite this. I cited this in the brief that I filed with this court on April 14th of last year when they filed the motion to stay the injunction and vacate it. And this was the Cromer decision out of the Fourth Circuit. And it's cited there. And what the Fourth Circuit said I think is very important. The March deadline focuses on an independent can to make a draconian decision to run for office before a rational basis for such decision exists. Such decisions would have to be made based upon premonitions of what may or may not happen in the future because the deadline prematurely cuts off such candidates' opportunity to respond to later developments. My candidate changed his mind after the trial on December 12th because of what had happened with another candidate from a minor party running for lieutenant governor because of problems that he had to do in dealing with certain things and because of the lateness of the decision and the continual appeals. So that's the reason that's done. But of course, we are the ones that let you know about the change in the law because I thought that might have an effect on the movements of the case. But you have to parse that a little bit, whether or not while the district court allowed him all day on May 1st, whether or not cutting it off at noon makes a difference. And I'm just saying that to me, it's not obvious. That's what makes hard, difficult decisions. And then the second point is about the fact that the district court allowed him to file the political practices pledge, the affidavit and the notice of candidacy at the same time, which is the way it was allowed under this law that was challenged, but not under the new law. So once again, does that mood it also? And of course, then of course, we get to the question that was also in the libertarian case about whether he was prevailing party because he did get some relief. So- Does your client have a position in the district court as to a less restrictive specific change that would have been preferable to the March 1 deadline? Well, forgetting about the law of the case doctrine, yes, our position was, and I think we had a number of cases we cited and were talked about in the earlier decision, where I think that the deadline for independent candidates should be no earlier than the preferential primary. It should be at the same time. So I mean, I think it should be later. It has been as late as May 29th. That's just putting the state's interest aside. No, no. It's absolutely ignoring the Anderson careful analysis. Well, you have to look at the Anderson analysis. The last step of which was a less restrictive means. The Anderson and this circuit, and I think the second McLean case said that people should be able to consider independent and new party candidates at the time of the major parties campaigning and after they've selected their nominees. That is what the Eighth Circuit has said. That's what the U.S. Supreme Court has said. And that's a factor. That's the first. That's the one side of the weighing equation. Yes, it is. The other side is the state's interest. And then the third step is, what's the least restrictive way to achieve the state's needed objective? And under the record in this- What was your position on Anderson on remand? Yes, on remand. Well, to the extent that we were limited, of course, by the remand decision of this court, it was that there could be a later time. Because if you look at the record, they could have on either their primary election or their runoff election, they could still have the petitions. They still wouldn't have an interference with validating them. We showed how quickly they could do that. And it wouldn't interfere with their interest. It wouldn't be necessary, as the U.S. Supreme Court has said. How did you deal with the court orders that would come in such a way that the federal changes in federal law couldn't be complied with? Because there was no showing that there was any interference with that. Because the independent candidates, if they're successful in petitioning, get on the general election ballot in November. And they print the ballots. They have plenty of time to print the ballots, deal with challenges. There was no showing at all that there would be any interference there. So therefore, the state could not show that their compelling state interest made it necessary to have that. So I think that. But of course, that's not the issue here because the court in the remand said to basically look at the May 1 deadline that had existed before. So anyway, I see the bounce of my time is off unless someone has a question. No. Thank you. I think we understand the issues in the case. It's been thoroughly briefed and argued. We'll take it under advisement. Thank you, Your Honor.